UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELTON WARD, | No. 2:24-cv-0158 AC P |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

Plaintiff is a county inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983 without a lawyer. Pending before the court are plaintiff's motions to proceed in forma pauperis, expedite ruling on the cognizable claims, and amend the complaint, as well as screening of the first amended complaint ("FAC"). [1] ECF Nos. 2, 7-9.

I. Motion to Proceed In Forma Pauperis

Plaintiff filed a motion to proceed in forma pauperis—without paying the filing fee upfront for this action under 28 U.S.C. § 1915. ECF No. 2. Before the court ruled on the motion, plaintiff paid the full $405 filing fee. See docket, Receipt Number 200006653. Accordingly, plaintiff's motion to proceed in forma pauperis will be denied as moot.

---

[1] Because plaintiff filed the FAC (ECF No. 9) before the court could screen the original complaint (ECF No. 1), the court will proceed to screen the FAC, which is the operative complaint at this time.

1

II. **Motion to Expedite the Ruling**

On September 6, 2024, the court received plaintiff's motion to expedite the ruling on the cognizable claims. ECF No. 7. Plaintiff informed the court that he paid the filing fee and asked the court to expedite the screening. Id. at 1-2. Because plaintiff presented no basis to expedite the screening of the complaint in this case, and the court had older cases in need of screening, the court declined to expedite screening of plaintiff's case. This order, however, screens the operative complaint for cognizable claims, and the motion is therefore denied at moot.

III. **Motion to Amend**

On September 27, 2024, plaintiff filed a motion to amend the complaint along with a FAC. ECF Nos. 8, 9. The motion seeks to amend the complaint to replace Jane Doe with a named defendant, remove Jon Doe, and correct issues with respect to plaintiff's state law claims. Id. at 1-2. Since plaintiff is still within the time for filing an amended complaint as of right, see Fed. R. Civ. P. 15(a)(1), the request to amend is denied as unnecessary.

IV. **Statutory Screening of Prisoner Complaints**

A. **Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Id., 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

### B. Factual Allegations of the Complaint

The FAC presents thirteen claims against three individual defendants and three entity defendants. ECF No. 9. Specifically, Claims One, Three, Five and Seven allege that defendants Griggs, Vickers, Edwards—who were all females and opposite gender of plaintiff—and Bridging Evidence Assessment and Resources ("BEAR") clinic violated plaintiff's Fourteenth Amendment Right to Privacy and Bodily Integrity. Id. at 5-7, 10-11, 14-15, 17. Claims Two, Four, and Five allege that defendants Griggs, Vickers, and BEAR clinic violated plaintiff's Fourth Amendment rights to be free from unreasonable searches and seizures. Id. at 8-9, 12-15. Claim Six asserts a Fourteenth Amendment claim against defendant Vickers for "cruel and unusual punishment and excessive force." Id. at 16.[2] Claims Eight, Nine, and Ten assert state law claims of intentional infliction of emotional distress against defendants Vickers, BEAR clinic, and Sutter Health. Id. at 18-22. Claim Eleven asserts a state law claim of medical battery against defendant Vickers. Id. at 23-24. Claim Twelve alleges compliance with the California Government Claims Act ("CGCA"). Id. at 25-26. Lastly, Claim Thirteen presents a putative Monell failure to train claim against defendant County of Sacramento. Id. at 27-29.

Plaintiff sues all defendants in their individual and official capacities. Id. at 5, 8, 10, 12,

---

[2] The Fourteenth Amendment, which governs claims that pretrial detainees have been treated unconstitutionally, prohibits the excessive use of force and maltreatment that amounts to punishment. Bell v. Wolfish, 441 U.S. 520, 535, 539 (1979); Kinglsey v. Hendrickson, 576 U.S. 389 (2015). Although the FAC refers to "cruel and unusual punishment" in violation of the Fourteenth Amendment, that standard applies only to claims under the Eighth Amendment that a convicted prisoner has been treated unconstitutionally.

14, 16-19, 21, 23, 27.  In support of his claims, plaintiff provides the following factual allegations.

On January 19, 2023, plaintiff was arrested in Nevada County, California and transported to the sheriff's department in Sacramento County by defendants Griggs and Edwards.  Id. at 5.  On route to Sacramento County's sheriff's office, defendants Griggs and Edwards made a detour to Bridging Evidence Assessment and Resources ("BEAR") clinic where they escorted plaintiff to an empty exam room and closed the door.  Id. at 6, 8, 12, 14, 17, 21, 27.  In the exam room, defendant Vickers, the medical director and a doctor at BEAR clinic, asked to see the search warrant before conducting any procedures.  Id. at 6, 9, 12, 14, 21, 27.  Defendant Griggs responded that she had left it but had the charge sheet.  Id. at 6, 9, 12, 21, 27.  Defendant Vickers responded that "[the charge sheet] will work" and did not review a search warrant to determine the scope of the search before conducting any procedures.  Id. at 6, 8, 9, 12, 27.  When plaintiff stated he did not consent to any procedures, defendant Griggs responded, "this is a procedure for this type of case."  Id. at 6, 9, 13, 29.

Despite the lack of a search warrant, plaintiff's consent, or exigent circumstances Vickers' (1) ordered plaintiff to open his mouth and pull his pants and underwear down to his knees and expose his genitals and buttocks, and (2) swabbed plaintiff's penis, scrotum, and inside of his mouth with Q-tips.  See Id. at 7, 9, 10, 13, 15, 17, 19, 23-24, 28.  Because defendants Griggs, Edwards, and Vickers created a triangular "blockade" around plaintiff and Griggs and Edwards had guns, plaintiff asserts he complied under duress.  See id. at 6, 9, 15, 18, 22, 28.

While plaintiff's genital area and buttocks were exposed, Vickers stood about three feet away, Griggs sat about four feet away, and Edwards sat about six feet away.  Id. at 6, 9, 10-11, 15, 17, 18, 20, 22.  Neither Griggs nor Edwards tried to remove themselves from the exam room or turn away from plaintiff's exposed genitals and buttocks.  See id. at 7, 15, 17, 22, 29.  Defendant Vickers allowed them to watch the entire procedure.  See id. at 9-11, 15, 18, 19, 22, 28-29.

Vickers' swabbing of plaintiff's penis and scrotum with a Q-tip was cruel and unusual because it was excessive and unnecessary.  Id. at 16.  Vickers did both a blood draw and the

4

swabbing of his penis and scrotum for the purpose of searching for the presence of HV2. Id. at 16. According to plaintiff, the blood test is the best test, not sexually intrusive, and would have sufficed without the need to humiliate plaintiff. Id. at 16.

Based on the allegations above, plaintiff also asserts state law claims of intentional infliction of emotional distress against Vickers, BEAR clinic, and Sutter Health, and medical battery against Vickers. Plaintiff further asserts that he can bring his state law claims because he complied with the CGCA. See id. 19-25. According to plaintiff, on October 12, 2023, he mailed copies of his "Notice of Claim" and application to submit a delayed claim to defendants County of Sacramento, BEAR clinic, Sutter Health, and Vickers. Id. at 25. On October 28, 2023, defendant County of Sacramento rejected plaintiff's notice as untimely and denied plaintiff's application to submit a late claim. Id. BEAR Clinic, Sutter Health, and Vickers never responded. Id. On January 16, 2024, plaintiff filed a Petition to Be Relieved of Gov. Code 945.4 Restrictions. Id. On May 28, 2024, plaintiff mailed notices of hearing to defendants County of Sacramento, Bear Clinic, Sutter Health, and Vickers. Id. Plaintiff only received an objection from the County of Sacramento. Id. at 26. On September 13, 2024, the Sacramento Superior Court ruled in favor of the County of Sacramento and denied plaintiff's petition. Id. Plaintiff asserts that because BEAR clinic, Sutter Health, and Vickers did not respond, they defaulted, which gives the District Court jurisdiction against these defendants. Id.

Plaintiff's Monell claim against defendant County of Sacramento is based on the alleged failure to train defendants Griggs and Edwards, which resulted in the alleged constitutional violations. Id. at 29. Plaintiff's claims against defendant BEAR clinic are based on respondent superior, arising from Vickers' actions at their facility. Id. at 19-20. Plaintiff's claim against defendant Sutter Health is based on "Sutter Health having a parent-subsidiary relationship" with defendant BEAR clinic. Id. at 21.

As a result of defendants' actions, plaintiff alleges he suffered "substantial humiliation, severe mental anguish, severe emotional distress, nightmares, and fear of white female officials." Id. at 5, 8, 10, 12, 15-19. By way of relief, plaintiff seeks $10,000,000 in compensatory damages, $15,000,000 in punitive damages, attorney's fees, and court cost. Id. at 30.

### C. Claims for Which a Response Will Be Required

After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that plaintiff's factual allegations state cognizable claims against Griggs, Edwards, and Vickers for violation of plaintiff's Fourth Amendment right to be free from an unreasonable search (Claims Two, Four), Fourteenth Amendment right to bodily privacy (Claims One, Three, Seven), and Fourteenth Amendment right to be free from excessive force and/or treatment amounting to punishment (Count Six).

Plaintiff has sufficiently alleged that the cross-gender search, while plaintiff was under arrest and in route to jail, which involved ordering plaintiff to pull down his pants and underwear and expose his genitals and buttocks and was observed by Griggs and Edwards from only four to six feet away, was unreasonable and a violation of plaintiff's right to bodily privacy. Also, liberally construing plaintiff's allegations, he has sufficiently alleged that the search performed by Vickers was unreasonable because it was warrantless—completed without a warrant being presented for inspection and review of the scope of the permissible search—and amounted to impermissible punishment because it was unnecessary and redundant of another test that was not sexually intrusive.

### D. Failure to State a Claim

However, the allegations in the complaint are not sufficient to state official capacity claims against Griggs, Edwards, and Vickers; a § 1983 claim against BEAR clinic (Claim Five); state law claims, such as intentional infliction of emotional distress or medical battery, against defendants BEAR clinic, Sutter Health, and Vickers (Claims Eight, Nine, Ten, Eleven, Twelve); and a Monell failure to train claim against the County of Sacramento (Claim Thirteen).

Plaintiff seeks only monetary relief against defendants Griggs, Edwards, and Vickers, and therefore can only sue them in their individual capacities.

With respect to BEAR, plaintiff seeks to hold the clinic liable under § 1983 for its' employee's actions—specifically defendant Vickers' alleged constitutional violations. However, municipal entities are not vicariously liable for the actions of their employees under § 1983. To hold a municipal entity liable under § 1983, plaintiff must allege that BEAR clinic has an

1 unconstitutional custom, practice, or policy, what that custom, practice or policy is, and how the
2 custom, practice, or policy amounts to deliberate indifference and deprived him of his
3 constitutional rights.  Plaintiff has not identified a custom, practice, or policy, much less one that
4 was the moving force behind the alleged constitutional violations.

Plaintiff similarly fails to state a Monell failure to train claim against the County of Sacramento because the FAC fails to present facts indicating a pattern of violations, or otherwise supporting the element of deliberate indifference on the part of the County to arrestees' or pretrial detainees' Fourth and Fourteenth Amendment rights to not undergo unnecessary, warrantless, and cross-gender searches during encounters with its' employees.

Lastly, the allegations in the FAC foreclose plaintiff's state law claims.  Plaintiff alleges he did not timely submit his state law claims and that his petition to proceed despite the untimeliness of his claims was denied by the Sacramento Superior Court.  The fact that only one defendant, the County of Sacramento, responded to his state petition, does not resolve the untimeliness of his claims, nor does it undermine the Superior Court's decision denying the petition.  Relatedly, allegations of compliance with the CGCA do not support a separate claim for relief.

It appears to the court that plaintiff may be able to allege facts to fix the problems against defendant BEAR clinic and County of Sacramento.  Therefore, plaintiff has the option of filing an amended complaint.

### E.  Options from Which Plaintiff Must Choose

Based on the court's screening, plaintiff has a choice to make.  After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**The first option available to plaintiff is to proceed immediately against Griggs, Edwards, and Vickers for violation of plaintiff's Fourth Amendment right to be free from unreasonable searches (Claims Two, Four), Fourteenth Amendment right to bodily privacy (Claims One, Three, Seven), and Fourteenth Amendment right to be free from excessive force and/or treatment impermissibly amounting to punishment (Count Six).  By choosing**

**this option, plaintiff will be agreeing to voluntarily dismiss his official capacity claims against Griggs, Edwards, and Vickers; the § 1983 claim against BEAR clinic (Claim Five); state law claims, such as intentional infliction of emotional distress or medical battery, against defendants BEAR clinic, Sutter Health, and Vickers (Claims Eight, Nine, Ten, Eleven, Twelve); and Monell failure to train claim against the County of Sacramento (Claim Thirteen). If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.**

V.      Plain Language Summary of this Order for Party Proceeding Without a Lawyer

Your request to proceed without paying the filing fee upfront is being denied because you have already paid the filing fee in full. Your motion to expedite the screening of your complaint is being denied because you presented no basis for the court to expedite the screening in your case before older pending cases, and because the motion is now irrelevant in light of this screening order. Also, your motion to amend is being denied as unnecessary because you have one opportunity to amend, without court authorization, before the complaint is served. Your FAC is accepted as your amendment as of right. Future amendments will require court authorization.

With respect to your alleged claims in the FAC, some of the allegations state claims against the defendants and some do not. You have stated claims against defendants Griggs, Edwards and Vickers for violating your right to be free from unreasonable searches, excessive force and treatment amounting to punishment, as well as your right to bodily privacy. You have not stated official capacity claims against Griggs, Edwards, Vickers, any state law claims against Vickers, or any claims against BEAR clinic, Sutter Health, or the County of Sacramento.

You have a choice to make. You may either (1) proceed immediately on your Fourth and Fourteenth Amendment claims against Griggs, Edwards, and Vickers in their individual capacities and voluntarily dismiss the other claims; or (2) try to amend the complaint. **To decide whether to amend your complaint, the court has attached the relevant legal standards that may govern your claims for relief. See Attachment A. Pay particular attention to these standards if you choose to file an amended complaint. And, if you chose to amend, make sure all your claims and allegations are stated in an amended complaint. Any claims not**

**made in an amended complaint will not be considered.**

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) and motion to expedite screening (ECF No. 7) are DENIED as moot.

2. Plaintiff's motion to amend the complaint (ECF No. 8) is DENIED as unnecessary.

3. Plaintiff's claims against defendants Griggs, Edwards, and Vickers in their official capacities, state law claims against Vickers, and claims against defendants BEAR clinic, Sutter Health, and County of Sacramento do not state claims for which relief can be granted.

4. Plaintiff has the option to proceed immediately on his Fourth and Fourteenth Amendment claims against defendants Griggs, Edwards, and Vickers as set forth in Section III above, or to file an amended complaint.

5. Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

6. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of plaintiff's official capacity claims against Griggs, Edwards, Vickers, state law claims against Vickers, or all claims against BEAR clinic, Sutter Health, or the County of Sacramento.

DATED: June 2, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELTON WARD,<br><br>        Plaintiff,<br><br>   v.<br><br>COUNTY OF SACRAMENTO, et al.,<br><br>        Defendants. | No.  2:24-cv-0158 AC P<br><br><br>NOTICE OF ELECTION |

Check one:

\_\_\_\_\_ Plaintiff wants to proceed immediately on his Fourth and Fourteenth Amendment claims against defendants Griggs, Edwards, and Vickers in their individual capacities without amending the complaint.  Plaintiff understands that by choosing this option, plaintiff's official capacity claims against Griggs, Edwards, Vickers, state law claims against Vickers, or all claims against BEAR clinic, Sutter Health, or the County of Sacramento will be voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

\_\_\_\_\_ Plaintiff wants time to file an amended complaint.

DATED:_____

                                                      Elton Ward<br>
                                                      Plaintiff pro se

Attachment A

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief. Pay particular attention to these standards if you choose to file an amended complaint.

I.   Legal Standards Governing Amended Complaints

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must specifically identify how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. See Local Rule 220. This is because, as a general rule, an amended complaint replaces the prior complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Therefore, in an amended complaint, every claim and every defendant must be included.

II.   Legal Standards Governing Substantive Claims for Relief

  A.  Section 1983 Claims, Generally

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Accordingly, "the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute,

(2) proximately caused (3) *by conduct of a 'person'* (4) *acting under color of state law.*" Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991) (emphasis added).

      Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. Monell v. Dep't of Social Services, 436 U.S. 658, 690 (1978). A private party's actions may be attributed to the state or local government if the private action "results from the [government's] exercise of coercive power, or when the [government] provides significant encouragement, either overt or covert, to the private actor." George v. Edholm, 752 F.3d 1206, 1215 (9th Cir. 2014) (citing Brentwood Acad. V. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001) (citation and internal quotation marks omitted).

      B.   Eleventh Amendment – Sovereign Immunity

      "The Eleventh Amendment bars suits against the State or its agencies for all types of relief." See Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., 616 F.3d 963, 967 (9th Cir. 2010); Fireman's Fund Ins. Co., v. City of Lodi, Cal., 302 F.3d 928, 957 n.28 (9th Cir. 2002) ("The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies."). The Eleventh Amendment, however, does not bar suits seeking damages against state officials in their individual capacities. Hafer v. Melo, 502 U.S. 21, 30-31 (1991). Nor does it bar suits seeking only prospective declaratory or injunctive relief against state officers sued in their official capacities. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (state officials sued in their official capacity for prospective relief are "person[s]" within the meaning of § 1983").

      C.   Personal Involvement and Supervisory Liability

      The civil rights statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally

2

required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). To state a claim for relief under § 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding is only liable for his or her own misconduct."). When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged; that is, a plaintiff must allege some facts indicating that the defendant either personally participated in or directed the alleged deprivation of constitutional rights or knew of the violations and failed to act to prevent them. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

D. Monell Liability

Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. Monell, 436 U.S. 658, 690 (1978); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). It is well-established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 692 (1978).

To state a Monell claim against a municipality, plaintiff must allege facts demonstrating "that an 'official policy, custom, or pattern' on the part of [the municipality] was 'the actionable cause of the claimed injury.'" Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting Harper v. City of Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008)). The Ninth Circuit has recognized four theories for establishing municipal liability under Monell: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." Horton by Horton v. City of Santa Maria, 915 F.3d 592,

3

602–03 (9th Cir. 2019).

To properly plead a Monell claim based on an unconstitutional custom, practice, or policy, plaintiff must demonstrate that (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) such policy amounts to deliberate indifference to plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. See Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997). The municipal policy at issue must be the result of a "'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002)).

To state a § 1983 claim based on a failure to properly train plaintiff must show: "(1) [plaintiff] was deprived of a constitutional right, (2) the municipality had a training policy that 'amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its law enforcement officers] are likely to come into contact;' and (3) [plaintiff's] constitutional injury would have been avoided had the municipality properly trained those officers." Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007). To satisfy the deliberate indifference standard plaintiff "must allege facts to show that the [defendant] 'disregarded the known or obvious consequence that a particular omission in their training program would cause . . . employees to violate citizens' constitutional rights.'" Flores v. County of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing Connick v. Thompson, 563 U.S. 51, 51-52 (2001)). A pattern of similar violations is ordinarily necessary to state a claim for failure to train, because absent such a pattern the municipality cannot have been aware that their failure to train would likely cause further constitutional violations. Id.

### E. Pretrial Detainees

"[P]retrial detainees . . . possess greater constitutional rights than prisoners." Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992). "Pretrial detainees, whether or not they have been declared unfit to proceed, have not been convicted of any crime. Therefore, constitutional questions regarding the circumstances of their confinement are properly addressed

1 under the due process clause of the Fourteenth Amendment." Trueblood v. Wash. State Dep't of
2 Soc. & Health Servs., 822 F.3d 1037, 1043 (9th Cir. 2016) (citation, internal quotation marks, and
3 alterations omitted); see also Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1246 n.5 (9th Cir.
4 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime,
5 while pretrial detainees are entitled to the potentially more expansive protections of the Due
6 Process Clause of the Fourteenth Amendment."); Byrd v. Maricopa Cnty. Bd. of Supervisors,
7 845 F.3d 919, 924 n.2 (9th Cir. 2017) (The Fourteenth Amendment, and not the Eighth
8 Amendment, governs cruel and unusual punishment claims of pretrial detainees.).
9       In Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015), the United States Supreme Court
10 "rejected the notion that there exists a single 'deliberate indifference' standard applicable to *all*
11 § 1983 claims, whether brought by pretrial detainees or by convicted prisoners." Castro v.
12 County of Los Angeles, 833 F.3d 1060, 1069 (9th Cir. 2016).

      F.   Fourteenth Amendment – Punishment of Pretrial Detainees

14      A pretrial detainee "may not be punished prior to an adjudication of guilt in accordance
15 with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979).

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal, if it is arbitrary and purposeless—a court permissibly may infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon detainees qua detainees."

20 Id. at 539. "[T]he determination whether these restrictions and practices constitute punishment in
21 the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive
22 governmental purpose and whether they appear excessive in relation to that purpose." Id. at 561;
23 see also Block v. Rutherford, 468 U.S. 576, 584 (1984) (citing Bell v. Wolfish, 441 U.S. 520,
24 538-39 (1979)) (absent objective evidence of intent to punish, the conditions or restrictions placed
25 on pretrial detainees' that are reasonably related to legitimate penological objectives do not
26 violate their rights to be free from punishment).
27      The Ninth Circuit in Byrd v. Maricopa Cnty Bd. of Supervisors, 845 F.3d 919, 924 (9th
28 Cir. 2017), held that allegations that female guards regularly observe male pretrial detainee's

5

bathroom and shower use from four to five feet away is sufficient to state a Fourteenth Amendment claim and warrant an answer.

### III. Fourth Amendment Unreasonable Search

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Courts examine "the totality of the circumstances" to determine whether a search or seizure is reasonable under the Fourth Amendment. Samson v. California, 547 U.S. 843, 848 (2006). This is done "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Id. (quoting United States v. Knights, 534 U.S. 112, 118-19 (2001)).

#### 1. Private Party

Law enforcement officers "may not avoid the requirements of the Fourth Amendment by inducing, coercing, promoting, or encouraging private parties to perform searches they would not otherwise perform." George v. Edholm, 752 F.3d 1206, 1215 (9th Cir. 2014); see also Norwood v. Harrison, 413 U.S. 455, 465 (1973) ("[I]t is . . . axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish."). "A private party's search may be attributed to the state when 'the private party acted as an instrument or agent of the Government' in conducting the search." George, 752 F.3d at 1215 (quoting Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 614 (1989)). Law enforcement officers "may be liable for a private party's search when [they] 'ordered or were complicit in the search.'" Id. (quoting United States v. Sparks, 265 F.3d 825, 831 (9th Cir. 2001).

#### 2. Warrantless Search

"Because warrantless searches and seizures are per se unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." United States v. Cervantes, 703 F.3d 1135, 1141 (9th Cir.

6

2012).  A valid consent is one exception.  Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); U.S. v. Delgadillo-Velasquez, 856 F.2d 1292, 1299 (9th Cir. 1988) ("The government bears the burden of demonstrating that consent to a warrantless search was voluntary.").  Exigent circumstances is another exception.  Birchfield v. North Dakota, 579 U.S. 438, 456 (2016). Under the exigent circumstances exception, law enforcement officers do not need to wait to get a warrant if there is an urgent need to provide aid or if there is a concern evidence might be destroyed in the time it would take to get a warrant.  Id.

### 3. Strip Search

A strip search is analyzed using the test for reasonableness outlined in in Bell v. Wolfish, as "[t]he Fourth Amendment prohibits only unreasonable searches." Bull v. City and County of San Francisco, 595 F.3d 964, 971-72 (9th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting Bell, 441 U.S. at 558).  Under Bell, the court must balance "the need for the particular search against the invasion of personal rights that the search entails." 441 U.S. at 559.  To do so, courts must consider "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." Id.

The Ninth Circuit has long recognized that "[t]he desire to shield one's unclothed figure[] from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." York v. Story, 324 F.2d 450, 455 (9th Cir. 1963). "Strip searches involving the visual exploration of body cavities [are] dehumanizing and humiliating." Kennedy v. Los Angeles Police Dep't, 901 F.2d 702, 711 (9th Cir. 1989).

"[C]ross-gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches." Byrd v. Maricopa Cnty. Sheriff's Dep't ("Byrd I"), 629 F.3d 1135, 1146 (9th Cir. 2011).  However, cross-gender surveillance of unclothed prisoners that is "infrequent and irregular," obscured, or from a distance is not unreasonable under the Fourth Amendment.  Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985) ("infrequent and irregular" cross-gender viewing of inmates is the shower is not unreasonable under the Fourth Amendment); see also Michenfelder v. Sumner, 860 F.2d 328, 334

7

(9th Cir. 1988) (observation of male prisoners by female guards during shower duty is reasonable because the observation from the video monitors provides, at most, indistinct and limited view; similarly cavity searches from a control both that provided limited view of the searches is reasonable); Sepulveda v. Ramirez, 967 F.2d 1413, 1416 (9th Cir. 1992) (parole officer's view of unclothed parolee's body that is "neither unobscured nor distant" is unreasonable).

The Ninth Circuit has held that cross-gender strip searches of a pretrial detainee are unreasonable as a matter of law when a female cadet touches the detainee's inner and outer thighs, buttocks, and genital area. Byrd I, 629 F.3d at 1142. It has also held that a pretrial detainee sufficiently states a Fourth Amendment unreasonable search claim based on allegations that female guards regularly view his bathroom and shower use from four to five feet away. Byrd v. Maricopa Cnty Bd. of Supervisors ("Byrd II"), 845 F.3d 919 (9th Cir. 2017).

### IV. Fourteenth Amendment – Right to Bodily Privacy

"[P]risoners retain a limited right to bodily privacy." Michenfelder, 860 F.2d 328, 333 (9th Cir. 1988). Parolees and pretrial detainees have at least the same due process right to bodily privacy as a prisoner. Sepulveda v. Ramirez, 967 F.2d 1413, 1416 (9th Cir. 1992) (holding that a male parole officer's unobscured and close observation of a female parolee's use of the toilet violates the parolee's "clearly established" right to bodily privacy); Byrd v. Maricopa Cnty. Bd. of Supervisors, 845 F.3d 919, 923-24 (9th Cir. 2017) (reversing the district court's dismissal under section 1915A because allegations that female guards regularly observe male pretrial detainee's bathroom and shower use from four to five feet away is sufficient to state a Fourteenth Amendment right to bodily privacy claim and warrant an answer).

### V. State Law Claims – Government Claims Act

Under the California Government Claims Act, no action for damages may be commenced against a public employee or entity unless a written claim was timely presented (within six months after the challenged incident) and acted upon before filing suit. See Cal. Govt. Code §§ 905, 945.4, 950.2. The resulting suit must "allege facts demonstrating or excusing compliance with the claim presentation requirement" or the state law claim is subject to dismissal. State of California v. Superior Ct., 32 Cal.4th 1234, 1239 (2004). "The requirement that a plaintiff must

affirmatively allege compliance with the [Government Claims Act] applies in federal court." Butler v. Los Angeles County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008); see also Mangold v. California Public Utilities Com'n, 67 F.3d 1470, 1477 (9th Cir. 1995) (failure to allege compliance with the California Government Claims Act subjects a state law claim against public defendants to dismissal). If a cause of action against a public entity is barred by the CGCA, so too is a cause of action against the public entity's current or former employees, based on the same injury. Cal. Gov't Code § 950.2; Watson v. State of California, 21 Cal.App.4th 836, 843 (1993).