UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELTON WARD,

Plaintiff,

v.

BOBI GRIGGS, ANGELA VICKERS, MELANIE MARINO,

Defendants.

No. 2:24-cv-0158 AC PC

ORDER and

FINDINGS AND RECOMMENDATIONS

Plaintiff is a county prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding on his First Amended Complaint (FAC), which has been narrowed by the court's screening order to his claims against defendants Bobi Griggs, Melanie Marino[1], and Angela Vickers for violations of his Fourth Amendment right to be free from an unreasonable search (Claims Two, Four), Fourteenth Amendment right to bodily privacy (Claims One, Three, Seven), and Fourteenth Amendment right to be free from excessive force and/or treatment amounting to punishment (Count Six). ECF Nos. 9, 16 at 1. Marino and Griggs filed an answer. ECF No. 27. Defendant Angela Vickers filed a motion to dismiss. ECF No. 28. Plaintiff opposed the motion to dismiss. ECF No. 37. Vickers replied. ECF No. 39. For the reasons set forth below, the undersigned recommends that the motion to dismiss be DENIED.

[1] The defendant Malinie Marino was initially erroneously named as Detective Edwards and subsequently re-identified as Melanie Marino. ECF No. 33

## I. Background

### A. The Complaint

Plaintiff alleges that on January 19, 2023 he was arrested in Nevada County, California and transported to the Sheriff's station on Auburn Boulevard in Sacramento County to be placed in the custody of Deputy Griggs. ECF No. 9 at 5. Deputy Griggs asked plaintiff a series of questions, then took him to the Sacramento County Jail pursuant to an arrest warrant. Id. Deputy Griggs sat in the back seat while her partner, Detective Marino, drove to the jail. Id. On the way to the jail, Marino exited the freeway to take plaintiff to the back door of the Bridging Evidence Assessment and Resources ("BEAR") Clinic. Id. at 6. They entered the building and plaintiff was taken to an exam table while Griggs removed plaintiff's handcuffs. Id. Defendant Angela Vickers, Medical Director and Doctor (id. at 3), entered the room with plaintiff, Griggs, and Marino. Id. at 6. Dr. Vickers asked to see the search warrant and defendant Griggs said "I lefted it, but here is the charge sheet." Id. Griggs handed Vickers some paperwork, to which Vickers responded, "that will work." Id.

Plaintiff informed Vickers, Griggs, and Marino that he did not consent to any procedures. Id. Griggs stated, "this is procedure for this type of case." Id. Plaintiff feared that any physical resistance would lead to great harm, so he did as he was told. Id. Vickers ordered plaintiff to open his mouth, and she took a swab of his mouth and placed the swab in a plastic bag. Id. at 7. Vickers then ordered plaintiff to pull his sweatpants and underwear to his knees, exposing his genitals and buttock to Griggs and Marino. Id. Vickers swabbed plaintiff's genitals, with Giggs and Marino watching. Id.

### B. Motion to Dismiss

Dr. Vickers moves to dismiss, asserting her conduct was reasonable under the circumstances and did not violate plaintiff's rights under the United States Constitution. ECF No. 28-1 at 2. In the alternative, Dr. Vickers asserts she is entitled to qualified immunity, as she was acting as an auxiliary for law enforcement at the time of the exam, and her conduct was not clearly unlawful. Id.

////

## II. Analysis

A. Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. Plaintiff States a Claim Against Dr. Vickers

To state a cognizable § 1983 claim, a plaintiff must allege the violation of a right protected by the Constitution and laws of the United States, and that the alleged deprivation was committed by a person who acted under color of state law. 42 U.S.C. § 1983; Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 921 (9th Cir. 2011). Plaintiff has alleged causes of action under both the Fourth and Fourteenth Amendments against Dr. Vickers based on the exam she performed. "[T]he Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy ... the naked body.'" Vazquez v. County of Kern, 949 F.3d 1153, 1165 (9th Cir. 2020) (citations omitted). "[P]risoners retain a limited right to bodily privacy," and pretrial detainees have "at least the same right to bodily privacy as a prisoner." Byrd v. Maricopa County Bd. of Supervisors, 845 F.3d 919, 923 (9th Cir. 2017). The Fourteenth Amendment right to bodily privacy analysis "largely mirrors" the Fourth Amendment unreasonable search test. Id.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures…" U.S. Const. amend. IV. Reasonableness is the touchstone under both the Ourth and Fourteenth Amendments. See Graham v. Connor, 490 U.S. 386, 3953 (1989) (reasonableness is the touchstone of a Fourteenth Amendment analysis); Ohio v. Robinette, 519 U.S. 33, 39 (1996) (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991).

"Whether a search is reasonable under the Fourth Amendment requires a case-by-case balancing of the need for the particular search against the invasion of personal rights that the search entails[.] The required factors for courts to consider include: (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." Byrd, 629 F.3d at 1141 (cleaned up).

Defendant relies primarily on caselaw from the Tenth Circuit to urge the court to adopt the proposition that when a medical professional relies on the "ostensibly legal order of a police officer" to conduct a search they do not act unreasonably. ECF No. 28-1 at 6, citing Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1178-81 (10th Cir. 2003). Marshall is, of course, not binding in the Eastern District of California, and the court does not find it persuasive here. The Ninth Circuit has been clear since at least 2011 that "cross-gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches." Byrd, 629 F.3d at 1146.

The one Ninth Circuit case cited by Vickers, United States v. Velasquez, 469 F.2d 264, 266 (9th Cir. 1972), is not on point. In Velasquez, the Ninth Circuit was not analyzing a constitutional claim. Instead, the Court was considering a criminal defendant's argument that evidence should be excluded from trial under the exclusionary rule because a body cavity search conducted at the boarder was unreasonable where there was no clear indication to border patrol agents or the physician that conducted the search that contraband was hidden in the body cavity. Velasquez, 469 F.2d at 265. The Velasquez court found that boarder patrol agents did, in fact, have probable cause, and that was sufficient: the agents were not required to inform the examining physician of all the facts supporting probable cause in order to use the evidence at trial. Id. The reasoning in Velasquez is not applicable here; the factual context is plainly different, and Velasquez was written in a different legal context as well: the analysis required for admissibility of evidence under the exclusionary rule is different than the analysis required for assessing whether a prima facie constitutional claim is stated.

The fact that Vickers acted at the behest of police officers does not, at least in this Circuit, automatically exempt her from liability. This is particularly the case where Vickers apparently

asked for a warrant and was not provided one before conducting the search. The fact that Vickers, who was working at an evidence assessment clinic, knew enough to ask for the warrant and continued with the cross-gender strip-search without being presented with a warrant, cuts against her argument that she could not or should not have known better. Plaintiff's complaint is sufficient to state a claim against Vickers.

C. Qualified Immunity Does Not Support Dismissal

In the alternative, Vickers argues that even if constitutional violations did occur, she is protected from liability by qualified immunity. For the reasons that follow, the undersigned concludes that qualified immunity does not protect Vickers at the pleading stage.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ). Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. Pearson, 555 U.S. at 231.

To overcome a claim of immunity, plaintiffs must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Kidd, 563 U.S. 731, 735 (2011); Jones v. Las Vegas Metropolitan Police Dep't, 873 F.3d 1123, 1130 (9th Cir. 2017) (quoting Ashcroft). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Jones, 873 F.3d at 1130 (brackets omitted) (internal quotation marks omitted) (quoting Anderson, 483 U.S. at 640).

Vickers claims, without citation, that "[a]s an auxiliary to the sheriff deputy in this case, Dr. Vickers is entitled to claim qualified immunity with regard to the claim made against her." ECF No. 28-1 at 8. It is unclear what Vickers means by "auxiliary," but the law is clear that the right to "immunity from suit does not attach simply because a private defendant performs a task

that can be characterized as a 'governmental function.'" Est. of Esche v. Bunuel-Jordana, 152 F.4th 1185, 1194 (9th Cir. 2025). While a private party may assert qualified immunity when hired by the government as an employee or private contractor, it does not appear from the complaint or the motion that Vickers was a government employee or contractor. Id. at 1193. Accordingly, Vickers has not demonstrated entitlement to qualified immunity at the pleading stage.

Regardless, as set forth above, The Ninth Circuit has been clear since at least 2011 that "cross-gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches." Byrd, 629 F.3d at 1146. While it is possible that development of the factual record may support assertion of qualified immunity on summary judgment, Vickers' motion to dismiss on this basis should be denied..

## III. Pro Se Plaintiff's Summary

The magistrate judge is recommending that defendant Angela Vickers' motion be denied, and that she be required to file an answer to the complaint. If you have objections to this recommendation, you may file objections within 14 days of this recommendation. The District Judge will make the final decision.

## IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall randomly assign a district judge to this action.

For the reason set forth above, the undersigned recommends that defendant Angela Vickers' motion to dismiss (ECF No. 28) be DENIED and that Vickers be required to file an answer to the complaint within 30 days of a final order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to

appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: August 13, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE